## Succession of James H. Coleman.

B., the guardian, appointed in Mississippi, of a minor having property in this State, filed a petition in the proper court, representing that the minor's property here was unproductive, and that she had no other; that it was to the interest of the minor that it should be sold, and the proceeds invested, and being unable to induce any person to become the tutor of the minor, he prayed the appointment of a special tutor and under-tutor, and that a family meeting be convoked to deliberate on the propriety of selling the property. The prayer was allowed, the appointment made, and under the advice of the family meeting the property was sold, and G. became the purchaser. He refused to comply with the terms of the sale, on the ground (among other grounds) that no special tutor could be legally appointed to the minor.

The appointment of a special tutor in this case was not legal, and the sale was a nullity.

In the sale of minors' property all the formalities of law must be observed for the validity of such sale.

Minors, when they become of age, can always avail themselves of nullities resulting from the omission of any of the formalities established by law in the sale of their property.

The purchaser of a minor's property at a judicial sale cannot be compelled to a compliance with the terms of the sale, unless the proceedings are clothed with all the formalities of law requisite to vest in him a legal title.

The appointment of the special tutor should be considered as mere surplusage. The petition for the sale was made by the foreign guardian, and the proceedings of the family meeting advising the sale might have been transmitted to the judge by any relative, or even a stranger. (LEA, J., dissenting, with whom concurred SPOFFORD, J.)

Any embarrassment on the question of the right of the special tutor to receive the price might easily be avoided by making the price payable to the foreign guardian. (LEA, J., dissenting, with whom concurred SPOFFORD, J.)

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Haynes*, for appellant. *Clarke & Bayne*, for appellee.

VOORHIES, J. On the 3d of February, 1853, *William H. Dameron* was appointed administrator of the succession of the late *James H. Coleman*. On the 15th of March following, *Malachi Bradford* filed a petition in the same court, alleging that he was the appointed guardian of his grand-daughter, *Angelina Coleman*, by the State of Mississippi, his domicil, where she was supported by him; that she had no other property than that which was under the administration of the court, and being unproductive, it was to her interest that the same should be sold and the proceeds thereof invested; and that he had in vain endeavored to induce some of her friends and relations to become her tutor. He concludes by praying that a special tutor and under-tutor be appointed to her, and that a family meeting be convoked to deliberate upon the propriety of the sale of the property and investment of the proceeds thereof.

On the same day, an order was granted appointing *William H. Dameron* as *special tutor*, and *Thomas A. McDaunold* as under-tutor, without requiring of the former any bond and security, &c. Upon the advice of a family meeting, convened and homologated as prayed for, the property, described as a certain lot of ground in the square bounded by Constance, Magazine, Richard and Felicity streets, in the First District of New Orleans, was offered for sale at auction, and adjudicated to *Alexander Gaffney*, for the price of $1400, payable one-fourth cash and the residue at one, two and three years' credit.

Upon the refusal of *Gaffney* to comply with the terms of the sale, a rule was taken upon him by *Dameron*, as *curator* and *special tutor*, to show cause why he should not do so. In answer to the rule, *Gaffney* urged several reasons for his refusal, among others: 1st. "That there was no legal order for the sale;

the said order being granted on the application of a *special tutor*, an officer who could not be appointed to the minor for the purpose of selling the real estate belonging to the minor, and the family meeting recommending the sale was prematurely and illegally convoked. 2d. That the effects of the estate have never been delivered to the tutor, nor has he been put in possession of the same," &c.

*Gaffney* is appellant from a judgment making the rule absolute.

We think the judge *a quo* erred. There are four sorts of tutorships known to our laws: tutorship by nature, tutorship by will, tutorship by the effect of the law, and tutorship by the appointment of the judge. (C. C. 264.) The law requires, in the cases prescribed, that "the judge shall appoint a tutor to the minor, by and with the advice of the meeting of the family." (C. C. 288.) In certain cases, the judge is authorized, with the advice of a family meeting, to appoint a discreet and responsible person as tutor to a minor, who shall in all respects comply with the existing laws in relation to tutors, except that of giving security for his administration. (Session Acts of 1834, p. 113, § 4.) "When the minor is without a tutor, any person who has a claim against him may apply to the competent judge to request that a tutor *ad hoc* be appointed to him, which tutor shall not be bound to give any security, but shall take an oath before the court who has appointed him, to defend the interest of the minor to the best of his knowledge." C. C. 295.

In cases of partition, the Code (Article 1291) provides: "If there are several minors who have opposite interests in the partition, and have the same tutor and curator, there shall be appointed to each of them a special tutor, whose functions shall cease as soon as the partition is terminated."

We are not aware of any other cases in which a tutor *ad hoc* or special tutor may be appointed to a minor. We think it is clear that the appointment in the present case does not fall within either of these exceptions. Assuming that the property in question belonged to the minor, as alleged, it is evident that the adjudication of it under those proceedings must be considered as a nullity. In the sale of minors' property, we consider it to be well settled that all the formalities of law must be observed for the validity of such sale. The conveyance derives its force and validity from the law; hence, where the law is not followed, it is clear that the authority which stands in place of the owners' consent is wanting. Applying this principle to the case at bar, it is manifest that the minor's consent is wanting, inasmuch as she cannot be considered as legally represented by a *special* tutor. Minors, when they become of age, can always avail themselves of nullities resulting from the omission of any of the formalities established by law in the sale of their property. 6 R., 471; 9 ibid., 78; 2 A., 648.

The cases on which the appellee relies, to the effect that a party is not permitted to look beyond the decree of a competent court authorizing the sale of minors' property, are, we think, clearly distinguishable from the present. The right of a purchaser of minors' property at a judicial sale to inquire into the regularity of the proceedings, we think may be fairly conceded, and cannot be compelled to a compliance with the terms of the sale unless such proceedings are clothed with all the formalities of law requisite to vest in him a legal title.

It is therefore ordered and decreed that the judgment of the court below be reversed, that the rule herein taken against the appellant, *Alexander Gaffney*, be discharged, and that the appellee pay the costs of both courts.

LEA, J., (with whom concurred SPOFFORD, J.,) dissenting. I think the adjudication of the property to the defendant in the rule was valid, and sufficient, in law to pass a title. It was based upon—

1st. A petition to that effect, made by the foreign guardian of the minor whose capacity is not questioned, and who suggests that the sale is necessary for the support and maintenance of the minor—the property being unproductive.

2d. An order of court, based upon this petition, convoking a family meeting.

3d. The action of the family meeting, duly convened, advising that the sale be made, as prayed for.

4th. The order of sale by the judge.

5th. The adjudication made in pursuance of the order of sale thus granted.

Now, it is true that in the course of the proceedings, at the suggestion of the foreign guardian, a special tutor was appointed, and the proceedings of the family meeting were submitted by him to the court for its approval; but this appointment may be considered a mere surplusage. Any relative, or even a stranger, may have transmitted the proceedings to the judge, whose order was based upon the original application for a sale, supported by the recommendation of the family meeting. The title of the purchaser is, I think, one which the minor could never hereafter disturb. The only difficulty which could possibly arise might be incident to a question as to the right of the special tutor to receive the price; and any embarrassment on this point might easily be obviated by making the price payable to the foreign guardian, or to his order.

The minor ought not to be deprived of the benefit of a satisfactory sale of the property. It is to be observed that the foreign guardian and special tutor are both acting together in the interest of the minor, and are represented by the same counsel.